UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

UNITED STATES OF AMERICA,

      Plaintiff,

      vs.

JON P. RUGGLES,

      Defendant,

_____/

## **COMPLAINT**

The United States of America, by and through the undersigned Assistant United States Attorney, hereby files its Complaint against the Defendant Jon P. Ruggles, and in support of its Complaint states as follows:

      1.      This Court has jurisdiction of this action pursuant to 18 U.S.C. §§ 1331, 1337, 1345, 1355, and 7 U.S.C. § 9a.

      2.      The Defendant Jon P. Ruggles is an individual residing at 2340 N.W. 41st Street, Boca Raton, FL 33431.  Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b).

      3.      On September 29, 2016, the U.S. Commodity Futures Trading Commission ("CFTC") issued an Order in In the Matter of: Jon P. Ruggles, CFTC Docket No. 16-34, ordering the Defendant Jon P. Ruggles to pay a civil monetary penalty (CMP) in the amount of $1,750,000.00 and disgorgement in the amount of $3,501,306.  The Order further provided that Defendant Jon P. Ruggles pay post-judgment interest at an annual rate of 0.60%, as determined

using the Treasury Bill rate pursuant to 28 U.S.C. § 1961. A true and correct copy of the CFTC

Order is attached hereto and labeled **Exhibit A**.

4.      To date, the Defendant has paid $1,471,261, which reduced the disgorgement

obligation to $2,030,045.  As of November 4, 2020, pursuant to 7 U.S.C. § 9a, Defendant Jon P.

Ruggles is obligated to pay a CMP and disgorgement amounting to $3,875,270.56. A true and

accurate calculation of amounts owed is set forth in an Updated Certificate of Indebtedness,

which is attached hereto and labeled **Exhibit B.**

5.       On November 9, 2020, counsel for the United States mailed the Defendant a

demand letter stating the amounts owed and advising Defendant that unless he paid the amounts

owed within ten days, the United States intended to file a lawsuit to recover the total amount due.

A true and correct copy of the demand letter is attached hereto as **Exhibit C**.

6.      As of the date of this Complaint, despite appropriate and timely demand,

Defendant has failed to pay the balance owed.

WHEREFORE, Plaintiff, the United States of America demands judgment against

Defendant Jon P. Ruggles in the amount of $3,875,270.56 ($3,780,045.00 principal and

$95,225.56 interest accrued through November 4, 2020), and interest to accrue at the annual rate

of 0.60% from and after November 4, 2020 to the date of judgment.  Post-judgment interest shall

accrue at the legal rate pursuant to 28 U.S.C. § 1961(a) and shall be computed daily and

compounded annually until paid in full.

Respectfully submitted,

**ARIANA FAJARDO ORSHAN**
**UNITED STATES ATTORNEY**

By: _____
      Brett R. Geiger
      Assistant U.S. Attorney
      Fla. Bar No. A5502622
      99 N.E. 4th Street, Suite 300
      Miami, FL  33132-2111
      Telephone No.  (305) 961-9190
      Fax No. (305) 530-7139
      E-mail: Brett.Geiger@usdoj.gov

JS 44   (Rev. 12/12) (Modified by FLSD - April 29, 2013)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.    *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)* NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.

### I. (a)   PLAINTIFFS

### DEFENDANTS

**(b)**  County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:        IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)**  Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

**(d)** Check County Where Action Arose:  ☐ MIAMI- DADE  ☐ MONROE  ☐ BROWARD  ☐ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE  ☐ HIGHLANDS

### II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
       Plaintiff

☐ 3   Federal Question
       *(U.S. Government Not a Party)*

☐ 2   U.S. Government
       Defendant

☐ 4   Diversity
       *(Indicate Citizenship of Parties in Item III)*

### III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)* and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV.  NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 480 Consumer Credit |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Mgmt. Relations | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Med. Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | | | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | | | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 864 SSID Title XVI | ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | **Other:** | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 530 General | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 535 Death Penalty | **IMMIGRATION** | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | |
| | | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | |
| | | ☐ 555 Prison Condition | | |
| | | ☐ 560 Civil Detainee – Conditions of Confinement | | |

### V.  ORIGIN *(Place an "X" in One Box Only)*

☐ 1  Original Proceeding  ☐ 2  Removed from State Court  ☐ 3  Re-filed (See VI below)  ☐ 4  Reinstated or Reopened  ☐ 5  Transferred from another district *(specify)*  ☐ 6 Multidistrict Litigation  ☐ 7  Appeal to District Judge from Magistrate Judgment  ☐ 8  Remanded from Appellate Court

### VI. RELATED/ RE-FILED CASE(S)
*(See instructions):*

a) Re-filed Case ☐YES ☐ NO      b) Related Cases ☐YES ☐ NO

JUDGE                                DOCKET NUMBER

### VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause *(Do not cite jurisdictional statutes unless diversity)*:

LENGTH OF TRIAL via _____ days estimated (for both sides to try entire case)

### VIII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:   ☐ Yes   ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

DATE                          SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #                AMOUNT                IFP                JUDGE                MAG JUDGE

JS 44 Reverse  (Rev. 12/12)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.     (a) Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence.  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys.  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.     Jurisdiction**.  The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.

United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked.  (See Section III below; federal question actions take precedence over diversity cases.)

**III.     Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.     Nature of Suit**.  Place an "X" in the appropriate box.  If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit.  If the cause fits more than one nature of suit, select the most definitive.

**V.     Origin**.  Place an "X" in one of the seven boxes.

Original Proceedings.  (1) Cases which originate in the United States district courts.

Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.  When the petition for removal is granted, check this box.

Refiled (3) Attach copy of Order for Dismissal of Previous case. Also complete VI.

Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.

Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.  When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment.  (7) Check this box for an appeal from a magistrate judge's decision.

Remanded from Appellate Court. (8) Check this box if remanded from Appellate Court.

**VI.     Related/Refiled Cases**. This section of the JS 44 is used to reference related pending cases or re-filed cases. Insert the docket numbers and the corresponding judges name for such cases.

**VII.     Cause of Action**.  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity**.              Example: U.S. Civil Statute: 47 USC 553
Brief Description: Unauthorized reception of cable service

**VIII.     Requested in Complaint**.  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand.  In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**Date and Attorney Signature**.  Date and sign the civil cover sheet.

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

|  |  |  |
|---|---|---|
|  | ) |  |
|  | ) |  |
|  | ) |  |
| _____ | ) |  |
| *Plaintiff(s)* | ) |  |
| v. | ) | Civil Action No. |
|  | ) |  |
|  | ) |  |
|  | ) |  |
| _____ | ) |  |
| *Defendant(s)* | ) |  |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____              _____
                                                              *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)*
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)*
_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*
_____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

UNITED STATES OF AMERICA
Before the
COMMODITY FUTURES TRADING COMMISSION



RECEIVED CFTC

Office of Proceedings
Proceedings Clerk
**11:43 am, Sep 29, 2016**

|  |  |
|---|---|
| In the Matter of: | ) |
| | ) |
| Jon P. Ruggles, | ) CFTC Docket No. 16-34 |
| | ) |
| Respondent. | ) |
| | ) |

## ORDER INSTITUTING PROCEEDINGS PURSUANT TO SECTION 6(c) AND 6(d) OF THE COMMODITY EXCHANGE ACT, MAKING FINDINGS AND IMPOSING REMEDIAL SANCTIONS

### I.

The Commodity Futures Trading Commission ("Commission") has reason to believe that, from at least March 2012 through December 2012 (the "Relevant Period"), Jon P. Ruggles ("Ruggles" or "Respondent" ) violated Sections 4b(a)(1)(A) and (C), 4c(a), 4c(b), and 6(c)(1) of the Commodity Exchange Act ("Act" or "CEA"), 7 U.S.C. §§, 6b(a)(1)(A) & (C), 6c(a), 6c(b), & 9(1) (2012), and Commission Regulations ("Regulations") 1.38(a), 33.10(a) and (c), and 180.1(a) and (c), 17 C.F.R. §§ 1.38(a), 33.10(a) & (c), & 180.1(a) & (c) (2015). Therefore, the Commission deems it appropriate and in the public interest that public administrative proceedings be, and hereby are, instituted to determine whether Respondent engaged in the violations set forth herein, and to determine whether any order should be issued imposing remedial sanctions.

### II.

In anticipation of the institution of an administrative proceeding, Respondent has submitted an Offer of Settlement ("Offer") that the Commission has determined to accept. Without admitting or denying any of the findings or conclusions herein, Respondent consents to the entry of this Order Instituting Proceedings Pursuant to Section 6(c) and 6(d) of the Commodity Exchange Act, Making Findings and Imposing Remedial Sanctions ("Order") and acknowledges service of this Order.[1]

---

[1] Respondent consents to the entry of this Order and to the use of these findings in this proceeding and in any other proceeding brought by the Commission or to which the Commission is a party; provided, however, that Respondent does not consent to the use of the Offer or the findings or conclusions in this Order consented to in the Offer, as the sole basis for any other proceeding brought by the Commission, other than a proceeding in bankruptcy or to enforce the terms of this Order. Nor does Respondent consent to the use of the Offer or this Order, or the findings or conclusions in this Order consented to in the Offer, by any other party in any other proceeding.

Exhibit A

**III.**

The Commission finds the following:

### A. <u>SUMMARY</u>

During the Relevant Period, Ruggles was responsible for developing his employer's fuel hedging strategies and for executing his employer's trades in crude oil futures and options, heating oil futures and options, and RBOB gasoline futures on the New York Mercantile Exchange ("NYMEX"), a division of CME Group. As an employee, and under his employer's policies governing employee conduct, Ruggles owed his employer a duty of trust and confidence to act in his employer's best interest and to keep confidential his employer's material, nonpublic information regarding its trading activity.

On at least 71 days between March 2012 and December 2012, Ruggles used material, nonpublic information regarding his trading on behalf of his employer to trade for his own personal benefit. On these days, Ruggles traded the same crude oil futures and options, heating oil futures and options, and RBOB gasoline futures that he traded for his employer in personal accounts in his wife's name, which he controlled. Ruggles sequenced his trading on these days in these personal accounts and his employer's accounts, all of which he controlled, so that the majority of the orders he placed in these personal accounts were executed against the orders he placed for his employer. The remaining orders in these personal accounts were filled by other market participants at the same limit-order prices. Altogether, these transactions generated at least $3,501,306 in ill-gotten trading profits.

By trading in this manner, Ruggles breached his duties to his employer and misappropriated his employer's material, nonpublic information for his own personal gain in violation of the Act and Regulations. In addition, by arranging his trading in both the personal accounts and his employer's accounts so that the orders he placed for the personal accounts were executed against the orders he placed for his employer, Ruggles negated market risk and avoided competitive execution. In so doing, Ruggles engaged in fictitious and noncompetitive trading in violation of the Act and Regulations.

### B. <u>RESPONDENT</u>

During the Relevant Period, Ruggles resided and worked in Atlanta, Georgia. Ruggles's work responsibilities included developing and implementing his employer's fuel hedging strategy, which included trading crude oil futures and options, heating oil futures and options, and RBOB gasoline futures on the NYMEX. He has never been registered with the Commission.

## C. FACTS

### 1. Ruggles's Job

Ruggles began working for the employer at issue in 2011.[2]  Ruggles had broad discretion to develop and execute his employer's fuel hedging strategy, which included trading crude oil futures and options, heating oil futures and options, and RBOB gasoline futures on the NYMEX. Ruggles had the authority to place orders and execute trades on behalf of his employer in his employer's trading accounts.

In this role, Ruggles possessed material, nonpublic information regarding his employer's strategies and plans for trading futures and options.  This included information regarding the specific trades in crude oil futures and options, heating oil futures and options, and RBOB gasoline futures his employer planned to execute on the NYMEX, the order types his employer would use to execute these trades, when and/or at what prices his employer would place these orders, and the number of contracts his employer would seek to trade.

As an employee, Ruggles had a duty of trust and confidence to his employer and owed his employer a duty to act in the employer's best interests, keep confidential the employer's material, nonpublic information, and not misappropriate this information for his own financial or personal benefit.  Ruggles also owed a duty to the employer under its policies governing employee conduct to protect the employer's confidential and proprietary information and avoid using this information for his own personal benefit.

### 2. Ruggles's Unlawful Trading

During the Relevant Period, Ruggles violated these duties and misappropriated his employer's material, nonpublic information.  Ruggles did so by using his knowledge of his employer's trading information and strategy to benefit his personal trading.  Specifically, Ruggles traded the same crude oil futures and options, heating oil futures and options, and RBOB gasoline futures that he traded for his employer in accounts in his wife's name that he had established and controlled, and he sequenced his trading in the personal and the employer's accounts so that the majority of the orders he placed in the personal accounts were executed against the orders he placed in his employer's accounts.  Any remaining orders in the personal accounts were filled by other market participants at the same prices as those filled by his employer's accounts.

The most common trading pattern Ruggles used involved opening a position in a futures or option contract he planned to trade on behalf of his employer in one of the personal accounts that he controlled.  Ruggles then placed limit orders in the personal account to offset this position at a profit, at prices not currently available in the market.  Because these limit orders were placed at prices away from the current market, these orders were not immediately filled.  Ruggles then placed orders in one of his employer's accounts for the same or a larger quantity of this contract on the opposite side of the market.  These orders for his employer were either immediately executed against the limit orders in Ruggles's personal account or were initially executed against

---

[2] This employer terminated Ruggles's services on December 19, 2012.

the current best offers or bids in the market before eventually being executed against the limit orders in Ruggles's personal account. The transactions between his employer's account and Ruggles's personal account typically offset all or most of the open positions in the personal account, generating trading profits. In some instances, a portion of Ruggles's personal limit orders was filled at his specified prices by other market participants, who placed orders at these prices after the personal limit orders began to be executed against his employer's orders. These transactions also generated trading profits for Ruggles.

Another trading pattern Ruggles used involved placing limit orders in one of the personal accounts he controlled to open a position in the same futures or options contract he planned to trade on behalf of his employer. In this pattern, Ruggles first placed limit orders to open a futures or options position in his personal accounts at advantageous prices not currently available in the market. These orders were not immediately filled. Ruggles then placed orders in one of his employer's accounts for the same contract on the opposite side of the market. The orders in his employer's account were either immediately executed against the limit orders in Ruggles's personal account or were initially executed against the current best offers or bids in the market before eventually being executed against the limit orders in Ruggles's personal account. In some instances, a portion of Ruggles's personal limit orders was filled at his specified prices by other market participants, who placed orders at these prices after the personal limit orders began to be executed against his employer's orders. Using his trading activity in his employer's accounts in this way, Ruggles was able to open positions in the personal accounts at better prices than were otherwise available in the market, and was later able to offset these positions at a profit.

At times during the Relevant Period, Ruggles used a combination of the two patterns described above: opening a position in one of his personal accounts by placing limit orders that were executed against orders he placed in one of his employer's accounts, and then offsetting this position at a profit by placing limit orders that were executed against additional orders he placed on behalf of his employer.

Ruggles knew that the orders he placed in his personal accounts would be executed against the orders he placed in his employer's accounts or, alternatively, would be executed against orders from other market participants at the price specified in those orders. By trading in this manner, Ruggles all but guaranteed that the orders he placed in his personal accounts to open and/or offset positions would be filled at advantageous prices. For those trades in his personal accounts that he executed against trades in his employer's accounts, Ruggles was able to avoid competitive execution and negate market risk.

Ruggles never disclosed to his employer that he planned to execute trades in his personal accounts using the material, nonpublic information he had obtained through his trading on its behalf. By executing these trades, Ruggles breached the duties that he owed to his employer and misappropriated the information for his own benefit.

Ruggles engaged in this conduct on 71 days during the Relevant Period and generated trading profits totaling at least $3,501,306 in the personal trading accounts he controlled. Ruggles engaged in this conduct with respect to futures on 63 of these days, with respect to options on 11 of these days, and with respect to both futures and options on 3 of these days.

## IV.

## LEGAL DISCUSSION

**A.** **Section 6(c)(1) and Regulation 180.1: Employment of a Manipulative or Deceptive Device—Misappropriation of Material, NonPublic Information**

Section 6(c)(1) of the Act makes it unlawful for any person, in connection with any contract of sale of any commodity for future delivery, to use or employ any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission shall promulgate. Pursuant to this authority, the Commission promulgated Regulation 180.1, which, with respect to conduct on or after August 15, 2011, makes it unlawful to: (1) use or employ, or attempt to use or employ, any manipulative device, scheme, or artifice to defraud; (2) make, or attempt to make, any untrue or misleading statement of a material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading; or (3) engage, or attempt to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person.[3]

As the Commission has noted, "Section 6(c)(1) and final Rule 180.1 augment the Commission's existing authority to prohibit fraud and manipulation." *Prohibition on the Employment, or Attempted Employment, of Manipulative and Deceptive Devices and Prohibition on Price Manipulation,* 76 Fed. Reg. 41,398, 41,401 (July 14, 2011). In its Notice of Proposed Rulemaking for Regulation 180.1, the Commission made clear that its intent was "to interpret CEA section 6(c)(1) as a broad, catch-all provision reaching fraud in all its forms—that is, intentional or reckless conduct that deceives or defrauds market participants." *Prohibition of Market Manipulation,* 75 Fed. Reg. 67,657, 67,658 (CFTC Nov. 3, 2010). Put otherwise, the Commission has stated its intent to interpret the "in connection with" requirement "broadly, not technically or restrictively." 76 Fed. Reg. 41,405. Accordingly, "Section 6(c)(1) and final Rule 180.1 reach all manipulative or deceptive conduct in connection with the purchase, sale, solicitation, execution, pendency, or termination of any swap, or a contract of sale of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity." *Id.*

---

[3] "The language of CEA section 6(c)(1), particularly the operative phrase 'manipulative or deceptive device or contrivance,' is virtually identical to the language used in section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act")." 76 Fed. Reg. at 41,399. Indeed, when the Commission promulgated Rule 180.1, the Commission observed that "[g]iven the similarities between CEA section 6(c)(1) and Exchange Act section 10(b), the Commission deems it appropriate and in the public interest to model final Rule 180.1 on SEC Rule 10b-5." *Id.* Accordingly, case law developed under Section 10(b) of the Exchange Act and SEC Rule 10b-5 is instructive in construing CEA Section 6(c)(1) and Commission Regulation 180.1(a). The Commission explained, however, that because of "the differences between the securities markets and the derivatives markets, the Commission will be guided, but not controlled, by the substantial body of judicial precedent applying the comparable language of SEC Rule 10b-5." 76 Fed. Reg. at 41,399.

Trading on material, nonpublic information in breach of a pre-existing duty may violate Regulation 180.1. As the Commission has expressly stated, "[d]epending on the facts and circumstances, a person who engages in deceptive or manipulative conduct in connection with any swap, or contract of sale of any commodity in interstate commerce, or contract for future delivery on or subject to the rules of any registered entity, *for example by trading on the basis of material nonpublic information in breach of a pre-existing duty* (established by another law or rule, or agreement, understanding, or some other source), *or by trading on the basis of material nonpublic information that was obtained through fraud or deception*, may be in violation of final Rule 180.1." 41 Fed. Reg. 41,398, 41,403 (emphasis added). *See, e.g., In re Arya Motazedi*, Comm. Fut. L Rep. (CCH) ¶ 33,599 (Dec. 2, 2015) (finding that trader violated Regulation 180.1 by using employer's trading information to trade for his own benefit); *United States v. O'Hagan*, 521 U.S. 642, 652 (1997) (holding that a person violates SEC Rule 10b-5 by misappropriating confidential information for securities trading purposes in breach of a duty owed to the source of the information). The undisclosed trading on the basis of material, nonpublic information in breach of a duty defrauds the source of the exclusive use of the information. *Motazedi*, Comm. Fut. L Rep. (CCH) ¶ 33,599 at 78,304 (citing *O'Hagan*, 521 U.S. at 652); *see O'Hagan,* 521 U.S. at 652 ("Under th[e] misappropriation theory, a fiduciary's undisclosed, self-serving use of a principal's information to purchase or sell securities, in breach of a duty of loyalty and confidentiality, defrauds the principal of the exclusive use of that information.").[4] Such trading deceives not only the source of the information but harms the integrity of the markets and the investing public. *O'Hagan,* 521 U.S. at 652–53, 658.

Although Section 6(c)(1) of the Act is silent with respect to scienter, the Commission has stated that "recklessness is, at a minimum, necessary to prove the scienter element of final Rule 180.1." 76 Fed. Reg. at 41,404. Accordingly, Regulation 180.1 sets out the required scienter as "intentionally or recklessly."[5]

On 71 days during the Relevant Period, by trading futures and options in the manner described above, Ruggles intentionally or recklessly breached the duties he owed to his employer as an employee and under his employer's policies governing employee conduct and thereby misappropriated his employer's material, nonpublic information for his own benefit in violation of both Section 6(c)(1) of the Act and Rule 180.1.

---

[4] As the Supreme Court observed in *O'Hagan*, "misappropriators . . . deal in deception. A fiduciary who '[pretends] loyalty to the principal while secretly converting the principal's information for personal gain' 'dupes' or defrauds the principal. The undisclosed misappropriation of such information, in violation of a fiduciary duty, . . . constitutes fraud akin to embezzlement." 521 U.S. at 653–54. Consequently, the Court held that "misappropriation, as just defined, satisfies [the Securities Exchange Act of 1934] § 10(b)'s requirement that chargeable conduct involve a "deceptive device or contrivance" used "in connection with" the purchase or sale of securities. *Id.* at 653.

[5] Long-standing precedent defines "recklessness" as an act or omission showing "an extreme departure from the standards of ordinary care" that it is very difficult to believe the actor was not aware of what he or she was doing. *CFTC v. Kraft Foods Group, Inc.*, Case No. 15-cv-2881, 2015 WL 9259885 at *12 (N.D. Ill. Dec. 18, 2015); *Drexel Burnham Lambert Inc. v. CFTC*, 850 F.2d 742, 748 (D.C. Cir. 1998).

**B.**     **Section 4b(a)(1)(A) and (C): Fraud in Connection with Futures**

Section 4b(a)(1)(A) and (C) makes it unlawful for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce or for future delivery that is made, on or subject to the rules of a designated contract market, for or on behalf of any other person to cheat or defraud or attempt to cheat or defraud such other person or willfully to deceive or attempt to deceive such other person by any means whatsoever in regard to any such order or contract or the disposition or execution of any such order or contract, or in regard to any act or agency performed with respect to such order or contract for such person.

The misappropriation of confidential trading information by someone who owes a duty of trust and confidence to the source of that information, such as an employee's misappropriation of information belonging to his employer by using such information to trade for his own personal benefit, constitutes fraud under 4b(a). *See In re Sitzmann*, CFTC Docket No. 96-5, 1997 WL 82610 (Feb. 26, 1997) (finding that vice president of commodity trading of meat processer traded for his own benefit in a proprietary trading account on the basis of his employer's nonpublic and proprietary information about large orders in violation of 4b(a)).

Scienter under Section 4b(a) of the Act is established if the respondent intended to defraud, manipulate, or deceive, or if respondent's conduct represents an extreme departure from the standards of ordinary care." *CFTC v. R.J. Fitzgerald & Co.*, 310 F.3d 1321, 1328 (11th Cir. 2002). Scienter requires proof that a defendant committed the alleged wrongful acts intentionally or with reckless disregard for his duties under the Act. *See CFTC v. Noble Metals Int'l Inc.*, 67 F.3d 766, 774 (9th Cir. 1995); *see also Drexel Burnham Lambert Inc. v. CFTC*, 850 F.2d 742, 748 (D.C. Circ. 1988) (holding that recklessness is sufficient to satisfy scienter requirement). The Commission need only demonstrate that a respondent's actions were "intentional as opposed to accidental." *Lawrence v. CFTC*, 759 F.2d 767, 773 (9th Cir. 1985).

On 63 days during the Relevant Period, by trading futures in the manner described above, Ruggles knowingly or recklessly breached the duties he owed to his employer as an employee and under his employer's policies governing employee conduct and thereby misappropriated his employer's material, nonpublic information for his own benefit in violation of Section 4b(a)(1)(A) and (C) of the Act.

**C.**     **Section 4c(b) and Regulation 33.10(a) and (c): Fraud in Connection with Options**

Section 4c(b) of the Act prohibits entering into any option transaction involving any commodity regulated under the Act "contrary to any rule regulation, or order of the Commission prohibiting any such transaction or allowing any such transaction under such terms and conditions as the Commission shall prescribe." Regulation 33.10(a) and (c) makes it unlawful for any person "(a) [t]o cheat or defraud or attempt to cheat or defraud any other person" and "(c) [t]o deceive or attempt to deceive any other person by any means whatsoever in or in connection with an offer to enter into, the entry into, the confirmation of the execution of, or the maintenance of, any commodity option transaction." Conduct that violates Section 4b(a) of the

7

Act also violates Section 4c(b) and Regulation 33.10. *See, e.g.*, *CFTC v. Rosenberg*, 85 F. Supp. 2d 424, 445 (D.N.J. 2000) (analyzing Section 4b(a) and Section 4c(b) claims together).

On 11 days during the Relevant Period, by trading options in the manner described above, Ruggles knowingly or recklessly breached the duties he owed to his employer as an employee and under his employer's policies governing employee conduct and thereby misappropriated his employer's material, nonpublic information for his own benefit in violation of Section 4c(b) of the Act and Regulation 33.10(a) and (c).

### D.    Section 4c(a): Fictitious Sales

Section 4c(a) of the Act makes it unlawful for any person to offer to enter into, enter into, or confirm the execution of a transaction involving futures or options that is a fictitious sale. *In re Gimbel*, [1987-1990 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 24, 213 at 35, 003 (Apr. 14, 1988), *aff'd as to liability*, 872 F.2d 196 (7th Cir. 1989) (finding lumber trades prearranged as to contract, price, and quantity to be unlawful fictitious sales). "By enacting Section 4c(a), Congress sought to ensure that all trades are focused in the centralized marketplace to participate in the competitive determination of the price of the futures contracts." *In re Thomas Collins*, [1996-1998 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 27,194 at 45,742 (Dec. 10, 1997), *quoting* S.Rep. No. 93-1131, 93d Cong., 2d Sess. 16-17 (1974);

The Act does not define what is a "fictitious sale"; instead, Section 4c(a) broadly prohibits trades "that give the appearance of submitting trades to the open market while negating the risk or price competition incident to such a market." *In re FirstRand Bank, Ltd.*, Comm. Fut. L. Rep. (CCH) ¶ 33,233 (Aug. 27, 2014) (quoting *In re Harold Collins*, [1986-1987 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 22,982 at 31,903 (Apr. 4, 1986), *rev'd on other grounds sub nom. Stoller v. CFTC*, 834 F.2d 262 (2nd 1987)); *In re Fisher*, [2003-2004 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 29,725 at 56,052 n.11 (Mar. 24, 2004). Intent must be proven to establish a violation of Section 4c(a) of the Act. *Reddy v. CFTC*, 191 F.3d 109, 119 (2d Cir. 1999).

Here, Ruggles placed futures and options orders in personal accounts he controlled knowing that these orders would be matched in substantial part (if not entirely) against orders he was placing for his employer on the opposite side of the market for the same futures or options contract. For the trades in his personal accounts that he executed against trades in his employer's accounts, Ruggles was able to avoid competitive execution, negate market risk, and all but guarantee that these trades would be executed at the prices he sought. Accordingly, these trades constitute fictitious sales in violation of Section 4c(a) of the Act.

### E.    Regulation 1.38(a): Noncompetitive Trades

Regulation 1.38(a) requires that all purchases and sales of commodity futures and options be executed "openly and competitively." The purpose of this requirement is to ensure that all trades are directed into a centralized marketplace to participate in the competitive determination of the price of futures and options contracts.

8

Noncompetitive trades are generally transacted in accordance with expressed or implied agreements or understandings between and among the traders. *In re Gilchrist*, [1990-1992 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 24,993 at 37,652 (Jan. 25, 1991) (concerning intentional arrangement of series of transactions in gold pit). Engaging in fictitious trading is a form of noncompetitive trading that violates Regulation 1.38(a). *Gimbel*, ¶ 24,213 at 35,003. Scienter is a necessary element of Regulation 1.38, and the Commission must establish that respondent's participation in the noncompetitive execution of futures trades was "knowing." *See e.g.*, *In re Buckwalter*, [1990-1992 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 24,995 at 37,685 (Jan. 25, 1991); *In re Bear Stearns & Co.*, ¶ 24,994 at 37,666; *In re Gilchrist*, ¶ 24,993 at 37,653 n.26.

Here, Ruggles placed futures and options orders in personal accounts he controlled knowing that these orders would be matched in substantial part (if not entirely) against orders he was placing for his employer on the opposite side of the market for the same futures or options contract. For the trades in his personal accounts that he executed against trades in his employer's accounts, Ruggles was able to create the appearance of submitting trades to the open market while in fact avoiding competitive execution and negating any risk that he would not execute the trade at the price that he sought. By trading arranging trades between two trading accounts that he controlled, Ruggles engaged in noncompetitive transactions that violate Regulation 1.38(a).

## V.

## FINDINGS OF VIOLATIONS

Based on the foregoing, the Commission finds that, during the Relevant Period, Ruggles violated Sections 4b(a)(1)(A) and (C), 4c(a), 4c(b), and 6(c)(1) of the Act and Regulations 1.38(a), 33.10(a) and (c), and 180.1(a) and (c).

## VI.

## OFFER OF SETTLEMENT

Respondent has submitted an Offer in which he, without admitting or denying the findings and conclusions herein:

A. Acknowledges receipt of service of this Order;

B. Admits the jurisdiction of the Commission to all the matters set forth in this Order and for any action or proceeding brought or authorized by the Commission based on violation of or enforcement of this Order;

C. Waives:

(1) the filing and service of a complaint and notice of hearing;

(2) a hearing;

(3) all post-hearing procedures;

(4) judicial review by any court;

(5) any and all objections to the participation by any member of the Commission's staff in the Commission's consideration of the Offer;

(6) any and all claims that he may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (2012) and 28 U.S.C. § 2412 (2012), and/or the rules promulgated by the Commission in conformity therewith, Part 148 of the Regulations, 17 C.F.R. §§ 148.1-30 (2015), relating to, or arising from, this proceeding;

(7) any and all claims that he may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, §§ 201-253, 110 Stat. 847, 857-68 (1996), as amended by Pub. L. No. 110-28, § 8302, 121 Stat. 112, 204-205 (2007), relating to, or arising from, this proceeding; and

(8) any claims of Double Jeopardy based upon the institution of this proceeding or the entry in this proceeding of any order imposing a civil monetary penalty or any other relief;

D.  Stipulates that the record basis on which this Order is entered shall consist solely of the findings contained in this Order to which Respondent has consented in the Offer; and

E.  Consents, solely on the basis of the Offer, to the Commission's entry of this Order that:

(1) makes findings by the Commission that Respondent violated Sections 4b(a)(1)(A) and (C), 4c(a), 4c(b), and 6(c)(1) of the Act and Regulations 1.38(a), 33.10(a) and (c), and 180.1(a) and (c);

(2) orders Respondent to cease and desist from violating Sections 4b(a)(1)(A) and (C), 4c(a), 4c(b), and 6(c)(1) of the Act and Regulations 1.38(a), 33.10(a) and (c), and 180.1(a) and (c);

(3) orders Respondent to pay a civil monetary penalty in the amount of one million, seven hundred and fifty dollars ($1,750,000), plus post-judgment interest, according to the terms set forth below;

(4) orders that Respondent be permanently prohibited from, directly or indirectly, engaging in trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. §1a(4) (2012)), and all registered entities shall refuse him trading privileges; and

(5) orders Respondent to comply with the conditions, undertakings, and representations consented to in the Offer and set forth in Part VII of this Order, including the undertaking that Respondent pay disgorgement in the amount of three million, five hundred and one thousand, three hundred and six dollars ($3,501,306), plus post-judgment interest, according to the terms set forth below.

Upon consideration, the Commission has determined to accept the Offer.

## VII.

## ORDER

**Accordingly, IT IS HEREBY ORDERED THAT:**

A. Respondent shall cease and desist from violating Sections 4b(a)(1)(A) and (C), 4c(a), 4c(b), and 6(c)(1) of the Act and Regulations 1.38(a), 33.10(a) and (c), and 180.1(a) and (c));

B. Respondent shall pay a civil monetary penalty in the amount of one million, seven hundred and fifty thousand dollars ($1,750,000) (the "CMP Obligation"), plus post-judgment interest. Post-judgment interest shall accrue on the CMP Obligation beginning on the date of entry of this Order and shall be determined using the Treasury Bill rate prevailing on the date of entry of the Order pursuant to 28 U.S.C. § 1961 (2012)

Respondent shall satisfy the Disgorgement Obligation (as defined below in Section VII. D. 3.) and the CMP Obligation by making payments as follows:

(1) $1,051,261 to be paid on the date of entry of this Order;

(2) $650,000, plus post-judgment interest, to be paid within 6 months of the date of entry of this Order;

(3) Five payments of $600,000 each, plus post-judgment interest, to be paid within 12, 18, 24, 30, and 36 months of the date of entry of this Order, respectively; and

(4) A final payment of $550,045, pus post-judgment interest, to be paid within 42 months of the date of entry of this Order.

Payments shall be deemed made on the date they are received by the Commission. Payments received by the Commission shall be credited first against the Disgorgement Obligation, plus post-judgment interest. When the Disgorgement Obligation, plus post-judgment interest, is fully satisfied, then payments received by the Commission shall be credited against the CMP Obligation, plus post-judgment interest. If any payment is not made by the date the payment is required by this Order, the entire outstanding balance of the Disgorgement Obligation and the CMP Obligation, plus any additional post-judgment interest, shall be due and payable immediately, without further application.

Respondent shall make each payment towards satisfaction of the Disgorgement Obligation and the CMP Obligation by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. If payment is to be made other than by electronic funds transfer, Respondent shall make the payment payable to the Commodity Futures Trading Commission, and sent to the address below:

> Commodity Futures Trading Commission
> Division of Enforcement
> ATTN: Accounts Receivables
> DOT/FAA/MMAC/AMZ-341
> CFTC/CPSC/SEC
> 6500 S. MacArthur Blvd.
> Oklahoma City, OK 73169
> (405) 954-7262 office
> (405) 954-1620 fax
> nikki.gibson@faa.gov

If payment is to be made by electronic transfer, Respondent shall contact Nikki Gibson or her successor at the above address to receive payment instructions and shall fully comply with those instructions. Respondent shall accompany payment of the Disgorgement Obligation and CMP Obligation with a cover letter that identifies Respondent and the name and docket number of this proceeding. Respondent shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

C.  Respondent is permanently prohibited from, directly or indirectly, engaging in trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2012)), and all registered entities shall refuse him trading privileges; and

D.  Respondent shall comply with the following conditions and undertakings set forth in the Offer:

1.  Public Statements:  Respondent agrees that neither he nor any of his successors, assigns, agents or employees under their authority or control shall take any action or make any public statement denying, directly or indirectly, any findings or conclusions in this Order, or creating, or tending to create, the impression that this Order is without a factual basis; provided, however, that nothing in this provision shall affect Respondent's (i) testimonial obligations or (ii) right to take legal positions in other proceedings to which the Commission is not a party.

2.  Respondent agrees that he shall never, directly or indirectly:

    a.  trade on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40));

12

    b.  enter into any transactions involving "commodity interests (as that term is defined in Regulation 1.3(yy), 17 C.F.R. § 1.3(yy) (2015)), for Respondent's own personal account or for any account in which Respondent has a direct or indirect interest;

    c.  have any commodity interests traded on Respondent's behalf;

    d.  control or direct the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

    e.  solicit, receive, or accept any funds from any person for the purpose of purchasing or selling any commodity interests;

    f.  apply for registration or claim exemption from registration with the Commission in any capacity, and engage in any activity requiring such registration or exemption from registration with the Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2015); and/or

    g.  act as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2015)), agent or any other officer or employee of any person (as that term is defined in Section 1a(38) of the Act, 7 U.S.C. § 1a(38) (2012)) registered, required to be registered, or exempted from registration with the Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2015).

3.  <u>Disgorgement:</u>  Respondent agrees to pay disgorgement in the amount of three million, five hundred and one thousand, three hundred and six dollars ($3,501,306) (the "Disgorgement Obligation"), plus post-judgment interest.  The Disgorgement Obligation represents the ill-gotten trading profits Ruggles generated through the scheme described above.  Post-judgment interest shall accrue on the Disgorgement Obligation beginning on the date of entry of this Order and shall be determined using the Treasury Bill rate prevailing on the date of entry of the Order pursuant to 28 U.S.C. § 1961 (2012).

4.  <u>Partial Satisfaction:</u> Respondent understands and agrees that any acceptance by the Commission of any partial payment of Respondent's Disgorgement Obligation or CMP Obligation shall not be deemed a waiver of his obligation to make further payments pursuant to this Order, or a waiver of the Commission's right to seek to compel payment of any remaining balance.

5.  <u>Change of Address/Phone:</u> Until such time as Respondent satisfies in full the Disgorgement Obligation and CMP Obligation as set forth in this Order, Respondent shall provide written notice to the Commission by certified mail of any change to his telephone number and mailing address within ten calendar days of the change.

**The provisions of this Order shall be effective on this date.**

By the Commission

Christopher J. Kirkpatrick
Secretary of the Commission
Commodity Futures Trading Commission

Dated: September 29, 2016

14

**U.S. COMMODITY FUTURES TRADING COMMISSION**
Three Lafayette Centre
1155 21st Street, NW, Washington, DC 20581
Telephone: (202) 418-5000
Facsimile: (202) 418-5521
*www.cftc.gov*

**Financial Management
Branch**


<u>**UPDATED CERTIFICATE OF INDEBTEDNESS**</u>


Debtor Name                                      Jon P. Ruggles
and Address:                                     2340 NW 41st Street
                                                 Boca Raton, FL  33431-8410


Total debt due United States as of September 29, 2016:  $5,251,306 plus interest


I certify that the records of the U.S. Commodity Futures Trading Commission (CFTC) show that Jon P. Ruggles (Ruggles) is indebted to the United States in the amount of $5,251,306, plus additional interest on the principal balance from September 29, 2016 at the annual rate of 0.60%.

The claim arose in connection with a September 29, 2016 Order Instituting Proceedings Pursuant to Section 6(c) and 6(d) of the Commodity Exchange Act against Ruggles.  *See CFTC v. Jon P. Ruggles,* No. 16-34 (CFTC September 29, 2016).   Pursuant to the Order, Ruggles was directed to pay a civil monetary penalty (CMP) in the amount of $1,750,000 and disgorgement in the amount of $3,501,306.   The CFTC received collections totaling $1,471,261 that was applied to the disgorgement obligation.  This collection reduced the disgorgement obligation to $2,030,045.

Ruggles has not made any additional payments to satisfy his CMP and disgorgement obligations and the CFTC has been unable to identify any assets of Ruggles.  Accordingly, the CFTC is referring this matter to the Department of Justice for enforced collection and a current assessment on whether Ruggles has assets to pay the CMP and disgorgement obligations.

As of November 4, 2020, Ruggles is obligated to pay CMP and disgorgement amounting to $3,875,270. 56. This amount represents the following: (a) the CMP principal judgment of $1,750,000 plus post judgment interest of $44,047.94; and (b) the disgorgement principal judgment of $2,030,045 plus post judgment interest of $51,177.62. Any questions regarding this matter should be directed to Linda Lightner of my staff at the above address or you may contact her by telephone at (202) 418-5227 or by e-mail at llightner@cftc.gov.


<u>**CERTIFICATION**</u>:  Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.



_____                                 _____
Keith Ingram,                                                                    (Date)
Accounting Officer



**U.S. Department of Justice**
*Ariana Fajardo Orshan*
*United States Attorney*
*Southern District of Florida*
*99 NE 4th Street, Suite 800*
*Miami, FL 33132-2111*

November 6, 2020

Jon P. Ruggles
2340 NW 41st Street
Boca Raton, FL 33431-8410

**Re: In the Matter of Jon P. Ruggles; CFTC Docket No. 16-34**

Dear Mr. Ruggles,

DEMAND IS HEREBY MADE UPON YOU FOR PAYMENT, WITHIN TEN (10) DAYS OF RECEIPT OF THIS NOTICE, of the amounts due and owing pursuant to the Order entered against you September 29, 2016. A copy of that Order is enclosed for your reference. The current balance of you obligation, as set forth in the attached Updated Certificate of Indebtedness, is $3,875,270.56.

Payment should be in the form of a money order, certified check or cashier's check, made payable to the U.S. Department of Justice and mailed to the Office of the United States Attorney, Attention: FLU, 99 N.E. 4th Street, Suite 300, Miami, FL 33132-2111.

If it is not possible for this obligation to be paid in full at this time, my office intends to file a Complaint to enforce the Order in the United States District Court for the Southern District of Florida. If you have any questions, I may be contacted by telephone at (305) 961-9190.

Sincerely,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY


BY: _____
   Brett R. Geiger
   Assistant U.S. Attorney
   Financial Litigation Unit
   United States Attorney's Office
   Southern District of Florida
   99 N.E. 4th Street, STE 300
   Miami, FL 33132

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.** _____

UNITED STATES OF AMERICA,

      Plaintiff,

      vs.

JON P. RUGGLES;

      Defendant.

_____/

**CIVIL COMPLAINT COVER SHEET**

1.     Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003?  _____ Yes  __X__ No

2.     Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007?  _____ Yes  __X__ No

Dated: _____          Respectfully submitted,
      Miami, Florida

                             **ARIANA FAJARDO ORSHAN**
                             **UNITED STATES ATTORNEY**

            By:    *s/Brett R. Geiger*_____
                    Brett R. Geiger
                    Assistant United States Attorney
                    Fla. Bar No. A5502622
                    United States Attorney's Office
                    99 N.E. 4th Street, Suite 300
                    Miami, Florida 33132
                    Tel. No. (305) 961-9190
                    Fax No. (305) 530-7139
                    E-mail: Brett.Geiger@usdoj.gov
                    Counsel for United States of America