UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:20-cv-82389-AMC

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

JON P. RUGGLES,

    Defendant.
_____/

**JON P. RUGGLES' RESPONSE IN OPPOSITION TO PLAINTIFF
UNITED STATES OF AMERICA's MOTION FOR SUMMARY JUDGMENT**

Defendant Jon P. Ruggles, pursuant to Federal Rule of Civil Procedure Rule 56 and Southern District of Florida Local Rules 7.1(c)(1) and 56.1, files this response in opposition to Plaintiff United States of America's Motion for Summary Judgment [DE-37] and in support states:

**MEMORANDUM OF LAW**

    **I.    The Government Is Not Entitled to Summary Judgment Where It Cannot Overcome Ruggles' Affirmative Defense.**

The government recognizes that its arguments in support of summary judgment are nearly identical to those raised in its motion for judgment on the pleadings. [DE-37 at 5]. For that reason, the government has chosen to incorporate by reference, rather than fully brief, those arguments here. *Id.* Summary judgment must be denied because the government continues to mischaracterize Ruggles' defense as urging nothing more than the inability to pay. While it is clear why the government would like to pigeonhole Ruggles into this single defense, the record, as set out below, establishes a genuine dispute of material fact that precludes the entry of summary judgment.

**A. There is a Genuine Issue of Material Fact as to Ruggles' Defense.**

Summary judgment is inappropriate where there is no evidence contradicting or opposing an affirmative defense. *Lebron v. Royal Caribbean Cruises, Ltd.*, Case No. 16-24687-CIV-Williams/Simonton, 2018 WL 5098972, *1 (internal citations omitted). As relevant here, in response to the government's complaint, Ruggles asserted that:

> his original settlement with the CFTC was premised on two assumptions: (1) that the amounts paid towards the disgorgement would be deductible from his overall tax liability in the U.S. and (2) that he would be able to realize a certain degree of efficiency given that he resided in the U.S. but earned the bulk of his income from Canada. At the time, Ruggles was essentially being whipsawed between two inconsistent tax regimes. The combination of U.S. tax laws and the aggressive over-withholding of income by the Canadian tax authorities severely impacted Ruggles' ability to pay. At that point, however, Ruggles believed that he would soon be able to free up sufficient funds to meet his obligations. As Ruggles explained to the CFTC, he believed that the sale of North Atlantic (NARL Refining LP), a company valued at $600 million and in which he owned a seven percent stake, was imminent. To back up his claim, Ruggles offered to provide the CFTC with audited financial statements for North Atlantic.
>
> Ruggles' situation had not improved by March 2018 when he provided the CFTC a further update. Notably, the CFTC responded to Ruggles' March correspondence acknowledging that it "appreciate[d] the challenges you are facing . . . ." Unfortunately, Ruggles continued to be hamstrung by the Canadian tax authorities and the internal partnership squabbles delaying the sale of North Atlantic.

[DE-12 at 2-3]. Ruggles would eventually be able to make some, but not all, payments towards the settlement amount. [DE-12 at 3].

The government has not offered any evidence to contradict or oppose the facts underlying Ruggles' defense. To the contrary, the record evidence supports Ruggles' claim that his performance under the settlement agreement depended on the occurrence of certain contingencies

2

which the government knew of and approved at the time of the settlement. For example, on February 12, 2018, Ruggles wrote to Thomas Simek at the CFTC stating, in relevant part:

> When I agreed to our settlement agreement in 2016, I based my cash forecast on 1) deducting disgorged money and 2) having reasonable tax efficiency. Unfortunately, both of these assumptions have not gone to plan, although I am reasonably confident that both will work out in the end.
>
> On a related noted, the eventual sale of North Atlantic will not be subject to the double withholding structure but rather only the US capital gains tax . . . . When we do finally sell North Atlantic (again, a company worth at least $600 million USD that currently has $160 million in cash and zero debt – of which I own approximately 7%), then I will have more than adequate funds available to true-up my obligation. . . . Currently the second largest owner of the company wishes to sell the business but the largest owner is opposed to doing so. There is considerable internal conflict within the partnership group regarding the sale issue. I suspect that we will sell or merge the company within 3 years.
>
> I do have audited financial reports (produced by KPMG) for North Atlantic and can provide them to you in a package if it helps to mitigate concerns regarding my creditworthiness at the CFTC. North Atlantic is a very healthy company that has rarely had an unprofitable month in the past 4 years . . . .
>
> In the next month, I am still anticipating a release from the Canadian CRA for their overwithholding [sic] of my 2016 earnings – and potentially 2017 earnings as well.
>
> Also, there are plans for a modest dividend payment (the first in 2 years) to be made in the 1st Quarter 2018 from North Atlantic to the owners. I do not have confirmation of when the dividend will be paid, but it should be soon. At that time, I will be able to make further payment to the CFTC.

[DE-35-7 at 3].

The CFTC did not dispute Ruggles' February 12th statements regarding his assumptions at the time the parties settled. The CFTC could have replied – as the government now contends – that Ruggles' understanding of the settlement was incorrect or, simply, irrelevant, to his payment

3

obligations. Instead, the CFTC thanked Ruggles for "the additional information" and asked if there had been "any further developments regarding the Canadian CRA release of withholdings from 2016 earnings or the dividend payment" referenced in Ruggles' email. [DE-35-7 at 2].

Subsequent communications between the parties, which are contained in the record here, only confirm the factual basis of Ruggles' defense. On March 26, 2018, Ruggles advised the CFTC that he and his partners had "placed a large corporate dividend . . . from the refinery into Luxembourg." [DE-35-7 at 2]. Ruggles explained that the money "is still waiting for additional legal documents to be completed in order to be released to the US." *Id*. Ruggles noted that he "had been waiting for this release for ~30 days but the partnership is being exceptionally slow with it. As soon as it has been released, then I will be able to make a partial payment." *Id*. With respect to his tax issues in Canada, Ruggles reported that he was still waiting to hear back from the Canadian CRA. *Id*. However, Ruggles outlined the steps he would be taking to repatriate capital (which, as understood by the parties, would be used to pay down the settlement amount). *Id*.

The CFTC, again, responded positively. Contrary to the government's position in this litigation, the CFTC did not dismiss Ruggles' circumstances as irrelevant to his payment obligation under the parties' settlement agreement. Rather, the CFTC thanked Ruggles "for the update and helpful information." *Id*. More importantly, the CFTC indicated that it "appreciate[d] the challenges you are facing . . . ." *Id*. While the CFTC expressed a desire to receive payment, *id*., it did not reject or otherwise challenge Ruggles' explanation for his failure to abide by the settlement agreement's economic terms.

### B. The Government Continues to Mischaracterize Ruggles' Defense.

Despite the plain meaning of the parties' communications, the government persists that Ruggles' inability to pay is not a defense to its collection action. [DE-37 at 5-6]. What the

government continues to misunderstand – or simply ignore – is the fact that Ruggles' inability to pay is directly linked to the failure of certain contingencies that were a fundamental part of his settlement agreement with the CFTC.

Rather than address this argument head-on, the government attempts to parse Ruggles' defense, in the hopes of applying otherwise inapplicable decisions. For example, the government relies on *Lewis v. Harcliff Coal Co.*, 237 F. Supp. 6, 8 (W.D. Pa. Jan. 17, 1965) and *Days Inn of America, Inc. v. Patel*, 88 F. Supp. 2d 928, 933 (C.D. Ill. Apr. 5, 2000), for the proposition that the inability to pay does not excuse performance. For emphasis, the court in *Lewis* added that "[a] person on relief could validly oblige himself on a judgment note for a million dollars." *Lewis*, at 8. But that is not what happened here. When Ruggles settled with the CFTC, it was understood, by both sides, that Ruggles would pay the settlement amounts owed upon the satisfaction of certain contingencies which the parties fully expected to occur.

The government's additional citations, recycled from its motion for judgment on the pleadings, remain distinguishable. *Butler v. Ross*, 16-CV-1282, 2017 WL 4876303 (S.D.N.Y. Oct. 27, 2017), involved a diversity action where the defendant sought to use New York's Mental Hygiene Law as a ruse to challenge the entry of a money judgment based on his inability to pay. The court denied the motion finding that "a simple assertion of the inability to pay is insufficient in New York to avoid payment of a judgment." *Butler*, 2017 WL 4876303, *1-2. The government's reliance on *Hotel, Motel & Rest. Emp. & Bartenders Union, Local 471, AFL-CIO*, 731 F. Supp. 88 (N.D.N.Y. Feb. 27, 1990), is similarly misplaced. There, the District Court found that "[a] party's financial ability to pay has never been the basis for declining to confirm an arbitration award." (internal citation omitted). As noted above, Ruggles defense goes beyond the general statements regarding ability to pay that have been rejected by the courts.

When it finally reaches the heart of the matter, the government simply asserts that Ruggles cannot overcome summary judgment by pleading commercial frustration. [DE-37 at 6]. Importantly, the government does not dispute that frustration of purpose "is generally understood as an affirmative defense to the enforcement of a contract." *Siegal v. GEICO Casualty Co.*, 523 F. Supp. 3d 1032, 1040 (N.D. Ill. 2021) (internal citations omitted). Moreover, the government agrees that the defense requires evidence that "(1) the frustrating event was not reasonably foreseeable and (2) the value of counterperformance has been totally or nearly totally destroyed by the frustrating event." *Id*. at 1040 (internal citation omitted).

For good reason, the government does not address the foreseeability prong. The communications cited above between Ruggles and CFTC make clear that the government understood that Ruggles' payments pursuant to the settlement agreement would flow from (1) funds released by the Canadian tax authorities and (2) payments made from the sale of North Atlantic or the release of certain dividends. [DE-35-7 at 3]. The government's inquiries and requests for additional information regarding these issues certainly confirm that the parties were traveling under the assumption that these monies would be released, *id*., thereby allowing Ruggles to honor the terms of the settlement.

With respect to the second prong, however, the government claims that there is no evidence that "the value of counter-performance by the CFTC had been totally or nearly totally destroyed by the frustrating event." [DE-37 at 6]. According to the government, the CFTC Order "eliminated the risk of continued litigation for both parties upon the terms established by the Order." *Id*. That is true, but only insofar as the government decided to forebear from any further litigation. In this case, it has not.

The parties always understood that Ruggles' ability to pay according to schedule (i.e., his performance) would turn on (1) the resolution of his tax issues with the Canadian authorities and (2) the receipt of certain monies from North Atlantic. [DE-37 at 5-6]. As part of the deal, the government understood that payment, according to the schedule set forth in the settlement agreement would depend on the satisfaction of the contingencies set forth above. If the contingencies did not occur within the time set forth for receipt of the scheduled payments, the government would have to work with Ruggles to restructure the payment schedule and/or the amount due. The government's refusal to do so in this instance has rendered the value of its performance under the settlement a nullity.

The government rounds out its brief with the claim that Ruggles "cannot establish that his obligation to pay was contingent upon his financial circumstances." [DE-37 at 7]. But that is not the standard. To survive summary judgment, Ruggles must be able to point to a genuine issue of material fact. *Lebron*, 2018 WL 5098972, at *1. The government's own argument here confirms the existence of a genuine factual dispute. Rather than cite to separate or independent facts, the government merely recites the very same emails Ruggles relies on here, offering its own interpretation of what the parties meant. For example, the government claims that the CFTC never "lifted, delayed, or modified" Ruggles' payment obligations. [DE-37 at 8]. Ruggles disagrees. In the parties' communications, cited above, it is clear that (1) the CFTC recognized that payment of the settlement terms depended on certain contingencies and (2) that the parties that those contingencies would be satisfied. The unforeseen failure of those contingencies resulted in Ruggles' in ability to make the scheduled payments under the settlement agreement.

Because the government has failed to present any evidence that would overcome Ruggles' affirmative defense, and because that defense is supported by record evidence which, if not dispositive, certainly raises a genuine dispute of material fact, summary judgment must be denied.

## CONCLUSION

Based on the foregoing points and authorities, Defendant Jon P. Ruggles respectfully asks this Court to deny Plaintiff United States of America's motion for summary judgment.

Dated: December 9, 2021.

                                      Respectfully submitted,

                                      **CARLOS F. GONZALEZ, P.A.**
                                      2332 Galiano Street
                                      2nd Floor
                                      Coral Gables, Florida 33134
                                      T. 486.410.7662

                                      By:  /s/ Carlos F. Gonzalez
                                              Carlos F. Gonzalez
                                              Florida Bar No. 0494631

## CERTIFICATE OF SERVICE

I certify that on December 9, 2021, I electronically served the foregoing document with the Clerk of the Court by using the CM/ECF system.

                                      */s/     Carlos F. Gonzalez*
                                              Carlos F. Gonzalez