**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

**CASE NO. 20-82389-CIV-CANNON/Reinhart**

**UNITED STATES OF AMERICA**,

      Plaintiff,

v.

**JON P. RUGGLES**,

      Defendant.

_____/

<u>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**</u>

**THIS CAUSE** comes before the Court upon the Motion for Summary Judgment ("Motion") filed by the United States of America ("Plaintiff" or "United States") on November 19, 2021 [ECF No. 37].  The Court has reviewed the Motion, Defendant's Opposition [ECF No. 41], Plaintiff's Reply [ECF No. 48], and the full record.  The Court also held a hearing on the Motion [ECF No. 55].  For the following reasons, Plaintiff's Motion is **GRANTED**.

**BACKGROUND**

The United States brings this action to enforce a 2016 order entered by the United States Commodity Futures Trading Commission ("CFTC") against Defendant Jon Ruggles ("Ruggles") [ECF No. 1 ¶ 6].  The following facts are drawn from the Parties' Joint Statement of Undisputed Facts and the attachments referenced therein [ECF No. 35]; Plaintiff's Statement of Undisputed Material Facts [ECF No. 36], and Defendant's Response to Plaintiff's Statement of Material Facts [ECF No. 42].

On September 29, 2016, the CFTC issued a final administrative decision against Ruggles based on allegations of fraud and insider trading [ECF No. 35 ¶ 5; *see* CFTC Order,

ECF No. 35-4 pp. 4–5].   The CFTC Order was entered with Ruggles's consent to resolve anticipated administrative proceedings under the Commodities Exchange Act, 7 U.S.C. §§ 1 *et seq.*, and accompanying regulations [ECF No. 36 ¶ 2; ECF No. 42 ¶ 2].   As a term of the settlement agreement, Ruggles waived his right to judicial review of any findings or penalties contained in the CFTC Order [ECF No. 36 ¶ 3; ECF No. 42 ¶ 3].

The CFTC Order requires Ruggles to pay a civil monetary penalty and disgorgement according to the following schedule:

(1) $1,051,261 to be paid on the date of entry of this Order;

(2) $650,000, plus post-judgment interest, to be paid within 6 months of the date of entry of this Order;

(3) Five payments of $600,00 each, plus post-judgment interest, to be paid within 12, 18, 24, 30 and 36 months of the date of entry of this Order, respectively, and

(4) A final payment of $550,045, p[l]us post-judgment interest, to be paid within 42 months of the date of entry of this Order.

[ECF No. 35-4 p. 12 (alteration added)].

Pursuant to the terms of the CFTC Order, if Ruggles fails to make a payment by the date required, then "the entire outstanding balance of the Disgorgement Obligation and the CMP Obligation, plus any additional post-judgment interest, shall be due and payable immediately, without further application" [ECF No. 35 ¶ 10; ECF No. 35-4 p. 12].   The CFTC Order further provides that "any acceptance by the Commission of any partial payment of Respondent's Disgorgement Obligation or CMP Obligation shall not be deemed a waiver of the Commission's right to seek to compel payment of any remaining balance" [ECF No. 35-4 p. 14].   The CFTC Order does not contain any other condition regarding payment of Ruggles's obligations.

Between February 2018 and June 2018, Ruggles communicated by email with counsel for the CFTC that he was having difficulty making the required payments [ECF No. 35 ¶ 13].   On

2

February 12, 2018, Ruggles sent an email to Thomas Simek, Chief Trial Attorney for the CFTC, indicating that, despite Ruggles's efforts to deduct his 2016 disgorgement payment from his taxes, his "marginal tax rate [was] still above 50% due to income from international sources," which Ruggles said was "critical to the speed in which I can pay the CFTC" [ECF No. 35-7 p. 3]. According to Ruggles, he faced an "over-withholding problem in which ~70% of my income is withheld between Canada and the US without any discretion on my end" [ECF No. 35-7 p. 3]. Ruggles further explained: "When I agreed to our settlement agreement in 2016, I based my cash forecast on 1) deducting disgorged money and 2) having reasonable tax efficiency. Unfortunately, both of these assumptions have not gone to plan, although I am reasonably confident that both will work out in the end" [ECF 35-7 p. 3].

In an email response on March 26, 2018, Mr. Simek responded to Ruggles, stating as follows:

> We appreciate the information you provide below. Have there been any further developments regarding Canadian CRA release of withholdings from 2016 earnings or the dividend payment you reference below? Are you now in a position to make some payment toward the settlement?

[ECF No. 35-7 p. 2].

On March 29, 2018, Ruggles sent another email to Mr. Simek, this time stating that he was waiting for a large corporate dividend to be released within 30 days, and noting that, "[a]s soon as [the dividend] has been released, then I will be able to make a partial payment" [ECF No. 35-7 p. 2 (alteration added)].  Mr. Simek replied on April 17, 2018, reiterating the importance of Ruggles's compliance with his payment obligations:

> Thank you for the update and the helpful information. We appreciate the challenges you are facing, but in order to demonstrate that you intend to abide by the payment plan set forth in the settlement order, and to avoid a determination that the amount you owe is uncollectible, it will be important for you to make a payment toward the settlement obligation this quarter. Please let us know if you do not expect to be able to do so.

[ECF No. 35-7 p. 2].

To date, Ruggles has paid a total of $1,471,261.00 toward the civil monetary penalty and disgorgement obligation [ECF No. 35 ¶ 12]. It is undisputed that the last payment that Ruggles made to the CFTC was a $245,000.00 payment in June 2018 [ECF No. 35 ¶ 12].

On November 9, 2020, the United States sent a demand letter to Ruggles requiring him to pay the full balance of his obligation to the CFTC [ECF No. 1-5]. The demand letter warned Ruggles that the United States intended to "file a Complaint to enforce the Order in the United States District Court for the Southern District of Florida" if Ruggles did not make a payment within ten days [ECF No. 1-5]. Thereafter, on December 23, 2020, the United States filed the instant action, demanding judgment against Ruggles in the amount of $3,875,270,56 plus post-judgment interest [ECF No. 1 ¶ 6].

On March 10, 2021, Ruggles filed an Answer and Affirmative Defense [ECF No. 12]. Ruggles's "First Affirmative Defense," quoted in full below, *infra* pp. 10–11, alleges that the Complaint "fails to state a cause of action" and then proceeds to allege that the CFTC Order "was premised on two assumptions: (1) that the amounts paid towards the disgorgement would be deductible from his overall tax liability in the U.S. and (2) that he would be able to realize a certain degree of efficiency given that he resided in the U.S. but earned the bulk of his income from Canada" [ECF No. 12 pp. 2–3]. In 2018, however, as pled in the "affirmative defense," Ruggles's "ability to pay" was "severely impacted" as a result of "aggressive over-withholding of income" by Canadian tax authorities followed by a delay in what he believed was an imminent sale of a

company of which he owned a 7% stake [ECF No. 12 pp. 2–3].   Those tax difficulties and corporate delays, Ruggles further pleads, continued to impact his ability to pay [ECF No. 12 p. 3].

On November 10, 2021, Keith Ingram, a CFTC Accounting Officer, filed a Sworn Certificate of Indebtedness stating that Ruggles is obligated to pay a civil monetary penalty and disgorgement in the amount of $3,899,204.67 [ECF No. 36 ¶ 4; ECF No. 42 ¶ 4; *see* Sworn Certificate of Indebtedness, ECF No. 35-6].

The United States now seeks summary judgment against Ruggles for the full amount owed under the CFTC Order [ECF No. 37].   The United States also challenges Ruggles's single affirmative defense as inadequate as a matter of law and unsupported on the record [ECF No. 37 pp. 5–7].   The Motion is ripe for adjudication.[1]

## LEGAL STANDARD

Summary judgment is appropriate where there is "no genuine issue as to any material fact [such] that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed R. Civ. P. 56(a).   An issue of fact is "material" if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   It is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

At summary judgment, the moving party has the burden of proving the absence of a genuine issue of material fact, and all factual inferences are drawn in favor of the non-moving party. *See Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).   The Court, in ruling on a motion for summary judgment, "need consider only the cited materials, but it may consider other materials

---

[1] Plaintiff previously filed a Motion for Judgment on the Pleadings [ECF No. 28], which the Court denied to permit adjudication on a more fulsome summary judgment record [ECF No. 44].

in the record." Fed. R. Civ. P. 56(c)(3).  The non-moving party's presentation of a "mere existence of a scintilla of evidence" in support of its position is insufficient to overcome summary judgment. *Anderson*, 477 U.S. at 252.

"For factual issues to be considered genuine, they must have a real basis in the record." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) (internal quotation marks omitted). Speculation or conjecture cannot create a genuine issue of material fact.  *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).  The moving party has the initial burden of showing the absence of a genuine issue as to any material fact.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  In assessing whether the moving party has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the non-moving party.  *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001).  Once the moving party satisfies its initial burden, the burden shifts to the non-moving party to come forward with evidence showing a genuine issue of material fact that precludes summary judgment.  *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002); Fed. R. Civ. P. 56(e).

## DISCUSSION

The United States argues that it is entitled to summary judgment for the full amount owed by Ruggles under the plain terms of the CFTC Order to which he consented in 2016 [ECF No. 37. pp. 1–5].  The Court agrees.  No genuine issues of material facts exist to preclude summary judgment, and Ruggles's "affirmative defense" fails as a matter of law.

It is undisputed that the terms of the CFTC Order—to which Ruggles consented in September 2016—required full payment of the $3,501,306.00 disgorgement obligation within 42 months of the date of entry of the CFTC Order, on or before March 2020 [ECF No. 35 ¶ 9; ECF No. 35-4 p. 12].  It is undisputed that Ruggles has paid only part of this obligation—

6

$1,471,261.00—with the last payment of $245,000.00 made in June 2018 [ECF No. 35 ¶ 12].  It is also undisputed that, according to the terms of the CFTC Order, "[i]f any payment is not made by the date the payment is required by this Order, the entire outstanding balance of the Disgorgement Obligation and the CMP Obligation, plus any additional post-judgment interest, shall be due and payable immediately, without further application" [ECF No. 35-4 p. 12].

Despite these undisputed facts, Ruggles argues that summary judgment is not warranted for two reasons: (1) a genuine issue of material fact purportedly exists regarding whether Ruggles and the CFTC conditioned performance under the settlement agreement on the occurrence of "certain contingencies" not stated in the agreement, and (2) Ruggles can overcome summary judgment via his "affirmative defense," which he describes in his opposition to summary judgment as "frustration of purpose" or "commercial frustration" caused by the failure of the two unstated contingencies [ECF No. 41 pp. 2–4, 6–7; *see also* ECF No. 30 pp. 4–6 (reiterating similar arguments in opposition to the United States' motion for judgment on the pleadings)].  Both arguments lack merit.

## A. No Genuine Dispute of Material Facts Exists as to Alleged Contingencies in the Settlement Agreement

Ruggles argues that "the record evidence supports Ruggles' claim that his performance under the settlement agreement depended on the occurrence of certain contingencies which the government knew of and approved at the time of the settlement" [ECF No. 41 pp. 2–3].  Those "contingencies" are described by Ruggles as his ability to "1) deduct[] disgorged money and 2) hav[e] reasonable tax efficiency" [ECF No. 35-7 p. 3; ECF No. 12 pp. 2–3 (alterations added)].

Ruggles's argument is negated by the plain language of the CFTC Order, and nothing in the summary judgment record creates a genuine issue of material fact on the question of Ruggles's obligation to pay as required by the CFTC Order.  As noted, the clear terms of the CFTC Order

required Ruggles to pay the entire obligation within 42 months of the date of the CFTC Order, on or before March 2020 [ECF No. 35 ¶ 9; ECF No. 35-4 p. 12]. The Order does not contain any qualifying language allowing for late or missed installment payments, much less any mention of either contingency referenced by Ruggles. Instead, the CFTC Order provides a schedule of payments with a warning that failure to timely make any payment will cause the full obligation to become "due and payable immediately, without further application" [ECF No. 35-4 p. 12]. "Where the terms of a contract are clear and unambiguous, the parties' intent must be gleaned from the four corners of the document." *Crawford v. Barker*, 64 So. 3d 1246, 1255 (Fla. 2011). "In such a situation, 'the language itself is the best evidence of the parties' intent, and its plain meaning controls.'" *Id.* (quoting *Richter v. Richter*, 666 So. 2d 559, 561 (Fla. Dist. Ct. App. 1995)). The plain language of the CFTC Order is unambiguous and governs here. *See Int'l Expositions, Inc. v. City of Miami Beach*, 274 So. 2d 29, 30–31 (Fla. Dist. Ct. App. 1973) ("The law is quite clear that courts may not rewrite, alter, or add to the terms of a written agreement between the parties and may not substitute their judgment for that of the parties in order to relieve one from an alleged hardship of an improvident bargain.").

The only evidence Ruggles offers to overcome the clear terms of the CFTC Order is a reference to his email correspondence with the CFTC in 2018, two years after the CFTC Order was entered [ECF No. 41 pp. 2–4]. In those emails, described above, Ruggles stated that he was having difficulty making the required payments, and that he had based his ability to meet the settlement obligation on a certain level of projected cashflow [ECF No. 35-7 p. 3]. From this, Ruggles extrapolates that "[t]he CFTC could have replied—as the government now contends— that Ruggles' understanding of the settlement was incorrect or, simply, irrelevant, to his payment obligations," but instead thanked Ruggles for "the additional information" [ECF No. 41 pp. 3–4;

ECF No. 35-7 pp. 2–3]. This, Ruggles contends, "certainly raises a genuine dispute of material fact" about contingencies assumed in the parties' settlement agreement [ECF No. 41 p. 8].

The 2018 emails provided by Ruggles do not raise a genuine issue of material fact on the question of Ruggles's obligation to pay as required by the clear terms of the CFTC Order. First, the email exchanges occurred in 2018, two years after the CFTC and Ruggles executed the Order, and there is nothing in those emails that offers any contemporaneous evidence of the parties' intent to condition the settlement on any contingencies or to otherwise modify the plain terms of the CFTC Order. Second, although the emails reflect Ruggles's statements in 2018 regarding his apparent personal assumptions about the parties' settlement two years earlier, nowhere in the emails does the CFTC endorse or adopt those assumptions. Indeed, as Mr. Simek warned Ruggles in the April 17, 2018 email, "in order to demonstrate that you intend to abide by the payment plan set forth in the settlement order, and to avoid a determination that the amount you owe is uncollectible, it will be important for you to make a payment toward the settlement obligation this quarter" [ECF No. 35-7 p. 2]. This correspondence reaffirms the plain terms of the CFTC Order, which sets forth in detail the required payment obligations and says nothing about conditioning payment on Ruggles's ability to pay, tax circumstances, or other commercial matters.

On this record, the United States has met its burden to show that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "When the non-moving party bears the burden of proof on an issue at trial, the moving party need not 'support its motion with affidavits or other similar material negating the opponent's claim,' in order to

9

discharge this initial responsibility.  Instead, the moving party simply may 'show[ ]'—that is, point[ ] out to the district court—that there is an absence of evidence to support the nonmoving party's case.'"  *Gonzalez v. Lee Cty. Hous. Auth.*, 161 F.3d 1290, 1294 (11th Cir. 1998) (quoting *Celotex*, 477 U.S. at 325) (internal citations omitted).  Here, the United States has shown that there is an absence of evidence to support Ruggles's case, and in turn, Ruggles has failed to provide evidence to overcome that conclusion.  There is no evidence in the record that the CFTC agreed with Ruggles's characterization of the settlement agreement, and the post-settlement emails fail to create a triable issue of fact on that question.  Summary judgment is warranted in favor of the United States.

**B.  Ruggles's Affirmative Defense Fails as a Matter of Law**

The United States also moves for summary judgment as to Ruggles's affirmative defense [ECF No. 37 p. 7].  In Ruggles's Answer to the Complaint, [ECF No. 12], Ruggles pleads an "Affirmative Defense" based on the same alleged "contingencies" as described above [ECF No. 12 pp. 2–3].  This defense is functionally identical to Ruggles's arguments in opposition to summary judgment and relies on the same record evidence—the 2018 email correspondence between Ruggles and the CFTC.

To fully understand the nature of Ruggles's untitled "First Affirmative Defense," the Court reproduces it here below:

> The Complaint fails to state a cause of action.  Paragraph 4 of the Complaint alleges that Ruggles has made no payment since November 4, 2020. [DE-1 at ¶4].  In 2018, Ruggles engaged in extensive email correspondence with the CFTC regarding the status of his payments.  In February 2018, Ruggles sent the CFTC a lengthy email explaining his financial position at the time.  Ruggles stressed that he intended to honor his commitment to the CFTC.  However, as Ruggles noted, his original settlement with the CFTC was premised on two assumptions: (1) that the amounts paid towards the disgorgement would be deductible from his overall tax liability in the U.S. and (2) that he would be able to realize a certain degree of efficiency given that he resided in the U.S. but earned the bulk of his income from Canada.  At the

time, Ruggles was essentially being whipsawed between two inconsistent tax regimes. The combination of U.S. tax laws and the aggressive over-withholding of income by the Canadian tax authorities severely impacted Ruggles' ability to pay. At that point, however, Ruggles believed that he would soon be able to free up sufficient funds to meet his obligations.  As Ruggles explained to the CFTC, he believed that the sale of North Atlantic (NARL Refining LP), a company valued at $600 million and in which he owned a seven percent stake, was imminent.  To back up his claim, Ruggles offered to provide the CFTC with audited financial statements for North Atlantic.

Ruggles' situation had not improved by March 2018 when he provided the CFTC a further update.  Notably, the CFTC responded to Ruggles' March correspondence acknowledging that it "appreciate[d] the challenges you are facing . . . ."  In April, Ruggles advised the CFTC that a payment would be forthcoming. Unfortunately, Ruggles continued to be hamstrung by the Canadian tax authorities and the internal partnership squabbles delaying the sale of North Atlantic.  Following a further exchange of emails, Ruggles was finally able to make the $245,000 payment referenced above.

[ECF No. 12 pp.  2–3].[2]

As pleaded, Ruggles's "affirmative defense" references the same two contingencies or assumptions discussed above and then offers various additional details as purported justification for his non-payment.  It does not, however, identify a specific legal theory that would provide a defense to his non-payment of his obligation to the CFTC.  This lack of precision has muddled the presentation of the defense and caused confusion, but the Court nevertheless evaluates the full substance of the defense in the light most favorable to Ruggles.[3]

---

[2]  Ruggles also leads his "affirmative defense" with the statement: "The Complaint fails to state a cause of action" [ECF No. 12 p. 2].  This apparent Rule 12(b)(6) challenge is not an adequate affirmative defense.  "A defense which points out a defect in the plaintiff's prima facie case is not an affirmative defense."  *In re Rawson Food Serv., Inc.*, 846 F.2d 1343, 1349 (11th Cir. 1988); *see Boldstar Technical, LLC v. Home Depot, Inc.*, 517 F. Supp. 2d 1283, 1292 (S.D. Fla. 2007) (explaining that failure to state a claim "is a defect in the plaintiff's claim; it is not an additional set of facts that bars recovery notwithstanding the plaintiff's valid prima facie case").  As noted, however, despite this deficiency, the Court examines the substance of the defense.

[3]  The United States first interpreted Ruggles's defense as an "inability to pay" defense [ECF No. 37 pp. 5–6], but then Ruggles responded that his defense had been "mischaracterized," invoking the doctrine of commercial frustration [ECF No. 41 pp. 4–7].

CASE NO. 20-82389-CIV-CANNON/Reinhart

The core of Ruggles's affirmative defense as pleaded is the same as Ruggles's theory in opposition to summary judgment—that the CFTC Order contained two unstated conditions or assumptions to payment that, in his view, excuse his noncompliance with the terms of the CFTC Order. This argument, based on the same 2018 email communications between Ruggles and the CFTC, fails for the reasons stated above and does not warrant repetition here.

If, on the other hand, Ruggles's defense is more properly viewed through the lens of "commercial frustration" as Ruggles has come to argue in his briefing, then it fails as a matter of law for this fundamental reason: the events on which Ruggles relies to claim that payment has become impossible and/or "frustrated"—i.e., a higher percentage of tax withholding by Canadian authorities and the delay of sale proceeds and/or dividends from a company of which Ruggles owns a 7% stake—were reasonably foreseeable in September 2016 when he entered into the CFTC agreement and could have been the subject of an express contractual provision but were not.

Under Florida law, a party may plead the doctrine of commercial frustration as an affirmative defense "where the parties could not provide themselves by the terms of the contract against the happening of subsequent events." *Fla. Dep't of Fin. Servs. v. Freeman*, 921 So. 2d 598, 608 (Fla. 2006) (quoting *Hilton Oil Transp. v. Oil Transp. Co., S.A.*, 659 So. 2d 1141, 1147 (Fla. Dist. Ct. App. 1995)). To state a defense for commercial frustration as an excuse for nonperformance of a contract, a party must demonstrate that: "(1) the frustrating event was not reasonably foreseeable, and (2) the value of counter-performance has been totally or nearly totally destroyed by the frustrating event." 17B C.J.S. Contracts § 707.

The doctrine of commercial frustration "does not apply where the intervening event was reasonably foreseeable and could and should have been controlled by provisions of such contract." *Hilton*, 659 So. 2d at 1147. "The doctrine of commercial frustration is limited to cases where

12

performance is possible but an alleged frustration, which was not foreseeable, totally or nearly totally destroyed the purpose of the agreement." *Valencia Ctr., Inc. v. Publix Super Markets, Inc.*, 464 So. 2d 1267, 1269 (Fla. Dist. Ct. App. 1985).  And application of the doctrine of commercial frustration "is not available concerning difficulties which could reasonably have been foreseen by the promisor at the creation of the contract."  *Home Design Ctr.--Joint Venture v. Cty. Appliances of Naples, Inc.*, 563 So. 2d 767, 770 (Fla. Dist. Ct. App. 1990).

In his briefing, Ruggles invokes the doctrine of commercial frustration as an excuse for his nonpayment to the CFTC, stating that "the government understood that Ruggles' payments pursuant to the settlement agreement would flow from (1) funds released by the Canadian tax authorities and (2) payments made from the sale of North Atlantic or the release of certain dividends" [ECF No. 41 p. 6].  This, Ruggles contends, establishes that intervening events—higher taxes and delayed business payments—were not reasonably foreseeable because the parties "were traveling under the assumption that these monies would be released, i.[e]., thereby allowing Ruggles to honor the terms of the settlement" [ECF No. 41 p. 6 (alteration added)].

Ruggles's theory of "commercial frustration," however generously construed, fails.  Ruggles admits that the two intervening events that have "frustrated" his ability to pay as agreed are rooted directly in the two unstated "assumptions" he says he presumed when he signed the agreement [ECF No. 41 pp. 5–6].  Those events were thus foreseeable at the time the CFTC Order was executed and cannot plausibly form the basis of an unforeseeable event sufficient to alter the CFTC Order or render it unenforceable under the doctrine of commercial frustration.  Indeed, Ruggles asserts (without evidence) that the parties "always understood" that his ability to pay would depend on "the resolution of his tax issues with the Canadian authorities" and on "the receipt of certain monies from North Atlantic" [ECF No. 41 p. 7].  If so, the parties could have chosen to

provide an alternative payment plan that reflected such contingencies or perhaps qualified Ruggles's payment obligations in the future, but the opposite is true.  The terms of the CFTC Order specifically—and without reservation—provide that failure to make any payment would cause the full obligation to become due immediately [ECF No. 35-4 p. 12].

Moreover, even if Ruggles had not himself "assumed" certain things about his expected tax burden or future business payments, Ruggles has presented no basis to believe that facing a larger tax burden than expected or not receiving an anticipated business dividend are unforeseeable events within the context of "commercial frustration."  Nor is the Court aware of any authority to support that view.  *See Home Design*, 563 So. 2d at 770 (rejecting defense of commercial frustration where a party to a lease sought to be released from its obligations after it failed to obtain insurance coverage for its retail appliance outlet, and holding that the party did not present "substantial competent evidence to establish that such basic business risks were matters which it could not have foreseen" when negotiating the terms of a lease); s*ee also Valencia Ctr., Inc.*, 464 So. 2d at 1269 (concluding that the doctrine of frustration of purpose did not excuse a plaintiff's performance of its obligations under a lease agreement when it faced a higher tax burden than expected because, although the plaintiff's intent to make a profit "frustrated by the tax rise," the plaintiff's property could "still be used for rental, the purpose of the lease").  "A natural extension to the observation that 'nothing is certain but death and taxes,' is that 'it is certain that taxes will rise.'"  *Id.* at 1270 (citing *Gulfstream Park Racing Ass'n, Inc. v. State Dep't of Bus. Regul., Div. of Pari-Mutuel Wagering*, 443 So. 2d 113, 114 (Fla. Dist. Ct. App. 1983).

Finally, Ruggles has proffered no evidence to establish that the value of counter-performance in this case—the United States foregoing further litigation to prosecute Ruggles for allegations of fraud and insider trading—has been "totally destroyed."  *Valencia*, 464 So. 2d at

CASE NO. 20-82389-CIV-CANNON/Reinhart

1269.  The value of the settlement agreement remains if Ruggles complies with the terms of the CFTC Order.  Thus, Ruggles's argument that the value of the settlement agreement has been rendered a "nullity" because the United States has not changed the terms of the agreement is without merit [ECF No. 41 p. 7].  *See* Restatement (Second) of Contracts § 265, cmt. a ("It is not enough that the transaction has become less profitable for the affected party or even that he will sustain a loss.  The frustration must be so severe that it is not fairly to be regarded as within the risks that he assumed under the contract.").

For these reasons, however construed, Ruggles's "affirmative defense" fails and provides no legal or evidentiary basis to excuse his performance under the clear terms of the CFTC Order.

## CONCLUSION

For the reasons stated above, it is hereby **ORDERED AND ADJUDGED** as follows

1. Plaintiff's Motion for Summary Judgment [ECF No. 37] is **GRANTED** in favor of the United States and against Defendant Jon Ruggles.

2. The Court will enter a separate order of final judgment pursuant to Federal Rule of Civil Procedure 58.

3. On or before **March 4, 2022**, the United States shall provide the Court with an updated amount of judgment owed by Ruggles pursuant to the CFTC Order.

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this 1st day of March 2022.


**AILEEN M. CANNON**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record

15